UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------x

In re:

GREGORY N. ALTIERI d/b/a
LNA ASSOCIATES LTD.,

                    Debtor.

Chapter 7

Case No.: 20-71951 (REG)

---------------------------------------------------------------------------------x

R. KENNETH BARNARD, Solely in his Capacity as Chapter 7
Trustee of the Estate of Gregory N. Altieri d/b/a LNA
Associates Ltd. and as Assignee of Claims of Creditors pursuant
to Orders dated April 22, 2021 and April 24, 2021 Dkt. Nos.
413, 416, 417, 418, 419, 420, and 421],

                    Plaintiff,

          -against-

Adv. Pro. No.: 21-        (REG)

LAWRENCE POMERANTZ a/k/a LARRY POMERANTZ,
EDWARD HORVATH, GRACIE SQUARE FUNDING, INC.,
GENEVIEVE CANCEL, HARBOR VISTA CORP., LAURIE
MENDELSON, C.B.K. CONSULTANTS INC. a/k/a CBK
CONSULTANTS INC., JONATHAN POMERANTZ a/k/a JON
POMERANTZ, ELIZABETH POMERANTZ, MARIA
HORVATH, CATHY BOMBARDIERE, ELI WILNER & CO.,
FOUR HEIRS INC., M PARK CAPITAL LLC (JOSEPH
GALLACE), JESSICA FLORES, DANIEL BURKO, DAVID
WALSH, EXTRANET VENTURE PARTNERS LLC, BOWL
CREW LLC, AMY CHANOS, APEX CLEARING
CORPORATION, L&L DESIGNS INC. a/k/a LAURA
MICHAELS DESIGN, ARDSLEY VENTURES, LLC, 38 ST
ROCH, LLC, JOHN HANCOCK FINANCIAL, GRACE BAY
CLUB, MIGDAL MANAGEMENT, SANTE SANTAPADRE,
J.P. MORGAN CHASE BANK, N.A., CITIBANK, N.A., JOHN
DOE "1" THROUGH "20", JANE DOE "1" THROUGH "20",
JOHN DOE CORPORATIONS "1" THROUGH "20", OTHER
JOHN DOE ENTITIES "1" THROUGH "20", ALONG WITH
ANY PROFESSIONAL, ATTORNEY, ACCOUNTANT, OR
ANY OTHER FICTITIOUS ENTITY THAT RECEIVED ANY
PART OF THE TRANSFERS OF PROPERTY OF THE
ESTATE, OR IS HOLDING PROPERTY OF THE ESTATE,

                    Defendants.

---------------------------------------------------------------------------------x

**COMPLAINT**

Plaintiff R. Kenneth Barnard, solely in his capacity as Chapter 7 Trustee ("Plaintiff" or "Trustee") of the estate of Gregory N. Altieri d/b/a LNA Associates Ltd. ("Debtor"), by his undersigned special litigation counsel, as and for his complaint against defendants Lawrence Pomerantz a/k/a Larry Pomerantz ("Pomerantz"), Edward Horvath ("Horvath"), Gracie Square Funding, Inc. ("Gracie Square"), Genevieve Cancel ("Cancel"), Harbor Vista Corp. ("Harbor Vista"), Laurie Mendelson ("Mendelson"), C.B.K. Consultants Inc. a/k/a CBK Consultants Inc. ("C.B.K." together with Gracie Square, Pomerantz, Horvath, Cancel, Harbor Vista and Mendelson are hereinafter the "Gracie Square Defendants"), Jonathan Pomerantz a/k/a Jon Pomerantz, Elizabeth Pomerantz, Maria Horvath ("M. Horvath"), Cathy Bombardiere ("Bombardiere"), Eli Wilner & Co. "Eli Wilner"), Four Heirs Inc., M Park Capital (Joseph Gallace) ("M Park"), Jessica Flores, Daniel Burko, David Walsh, Extranet Venture Partners LLC, Bowl Crew LLC, Amy Chanos, APEX Clearing Corporation, L&L Designs Inc. a/k/a Laura Michaels Design, Ardsley Ventures, LLC, 38 St Roch, LLC, John Hancock Financial, Grace Bay Club, Migdal Management, Sante Santapadre, J.P. Morgan Chase Bank, N.A. ("Chase"), Citibank, N.A. ("Citibank") (collectively, the "Defendants"), together with John Doe "1" through "20", Jane Doe "1" through "20", John Doe Corporations "1" through "20", Other John Doe Entities "1" through "20", along with any professional, attorney, accountant, or any other fictitious entity that received any part of the transfers of property of the estate, or is holding property of the estate (collectively, "Unnamed Defendants"), alleges as follows:[1]

## NATURE OF THE ACTION

1.      This adversary proceeding is brought by the Trustee to, inter alia, (i) avoid the initial transfers from the Debtor to defendant Gracie Square as a fraudulent conveyance which

---

[1]      Capitalized terms set forth herein shall have the same meaning ascribed to them in the Trustee's application for a temporary restraining order.

occurred in connection with the Debtor's Ponzi Scheme, and to collapse the transactions between the Debtor and Gracie Square as defendant Gracie Square was a mere conduit to the Gracie Square Defendants and the remaining Defendants listed herein; (ii) avoid and recover both the Immediate and Mediate Transfers (defined below) and other transfers made by defendant Gracie Square to the Gracie Square Defendants, the Other Defendants, and the Unnamed Defendants (all defined *infra*); and (iii) recover damages relating to the failure of all Defendants to repay the Gracie Square Transfers and the Immediate or Mediate Transfers  (as defined *infra*).

2.      The Trustee seeks immediate injunctive relief as it is clear that the Gracie Square Defendants are concealing the whereabouts of the Gracie Square Transfers which emanated from the Debtor, and have engaged in every available delay tactic, which may be with the assistance of their counsel, to undoubtedly shelter, hide, encumber or hypothecate their assets beyond the reach of the Trustee and the creditors of the estate.

3.      There is a long and detailed history of noncompliance outlined in the Trustee's Application for a temporary restraining order to provide this Court with the conclusion that due to (a) the Contempt Order and its noncompliance; and (b) the continued failure to provide crucial documents to the Trustee, a negative inference can be drawn against the Gracie Square Defendants and the issuance of injunctive relief is not only appropriate but warranted.  As the Contempt Order is no longer an incentive to comply, a restraining order is necessary and warranted to protect assets which are property of the estate.

4.      Recently, Gracie Square turned over documents after numerous Court hearings that started in early March 2021 which resulted in the entry of the Contempt Order. Even with a Contempt Order, Gracie Square did not turn over documents for almost 40 days. The most recent production revealed that Gracie Square is financing and developing an expensive piece of real

3

property located at 547 Hewlett Street, Franklin Square, New York 11010 ("<u>Franklin Square Property</u>") which is listed for sale at $1,150,000 (MM). Numerous parties identified herein are all attached to the Franklin Square Property. Clearly, this is one of the reasons Gracie Square was avoiding its financial disclosure so the property could be developed and sold and then allow time for Gracie to make the money disappear.

5.      The Trustee seeks emergency relief due to the recent document production from the defendant Gracie Square which revealed the development of Franklin Square Property and an imminent sale. The Trustee would not have uncovered this information but for this Court's Contempt Order [Dkt. No. 386] and directive for Gracie Square to turn over the cancelled checks for its bank account at defendant Chase.  Those cancelled checks finally revealed what Gracie Square has been doing with the Transfers received from the Debtor.

6.      Defendants Pomerantz and Horvath have engaged in a labyrinth of transfers seeking to conceal detection of the money and the Transfers.  They move the money in and out of shell companies and may be aided by their counsel, who uses every delay technique available to provide distractions.  This complex puzzle of transfers have been laid out in the Application and establishes that the Trustee is entitled to injunctive relief in order to protect and safeguard the Transfers of the Debtor's assets to the Gracie Square Defendants.

7.      The Gracie Square Defendants, guided by architects and co-conspirators, Pomerantz and Horvath, have engaged in a conspiracy to avoid detection of the Transfers. Collectively, the Gracie Square Defendants are recipients of Transfers for the Debtor totaling approximately $2,917,500 (MM). Despite this, from inception of the inquiry by the Trustee, the Gracie Square Defendants have feigned cooperation to acquire time to dispose of the Transfers. They have never asserted a defense and have admitted to the receipt of the Transfers, but merely

use deflection and detection to conceal the ultimate whereabouts of the Transfers and play this "catch me if you can" game with the Trustee and the Court.

8.      Finally, Pomerantz and Horvath also control at least two other shell entities – defendants C.B.K. and Harbor Vista and possibly others. They used the Gracie Square Transfers from the Debtor and further disposed of millions of dollars to these other shell entities to avoid detection, disclosure and subpoena compliance. Clearly, the $500 per day sanction the Court imposed in the Contempt Order is nothing in comparison to the Gracie Square Defendants ability to conceal over $3MM.

9.      The behavior of the Gracie Square Defendants must be stopped. The Trustee should be granted immediate relief to prevent the Gracie Square Defendants from selling their assets, further manipulating the estate by feigning cooperation and then looking to dispose of those same assets. But for this Court's intervention, and immediate relief, the Gracie Square Defendants will continue to engage in cunning behavior to the detriment and harm of the Debtor's estate and its creditors.

## JURISDICTION AND VENUE

10.      The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 323, 502, 541, 542, 544, 548, 550 and 551 ("Bankruptcy Code"), 28 U.S.C. § 2201, Rules 6009, 7001, and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), sections 273, 274, 275, 276 and 276-a of New York Debtor and Creditor Law ("DCL"),[2] New York Business Corporations Law 628, 717, 719 and 720 and any common law, rule, regulation and/or

---

[2]      On December 6, 2019, New York State enacted the *Uniform Voidable Transactions Act*," which repealed and replaced certain provisions relating to fraudulent conveyances (L 2019, ch 580, eff. Apr. 4, 2020). The new provisions, however, do "not apply to a transfer made or obligation incurred before" the effective date of April 4, 2020 (id., § 7). The transfers at issue in this adversary proceeding were each made prior to April 4, 2020 and, accordingly, are subject to avoidance and recovery under former Article 10 of the Debtor and Creditor Law.

any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to Plaintiff are located.

11.      This action arises under the Debtor's pending Chapter 7 bankruptcy case.

12.      This Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rules 6009, 7001 and 7065.

13.      This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(E), (b)(2)(H) and (b)(2)(O).

14.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

15.      Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## **THE PARTIES**

16.      Plaintiff is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

17.      Plaintiff is authorized to file this action under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

18.      Defendant Lawrence Pomerantz a/k/a Larry Pomerantz is an individual residing in the State of Connecticut with an address at 38 Sainte Roche Avenue, Unit G, Greenwich, Connecticut 06830.

19.      Defendant Edward Horvath a/k/a Ed Horvath is an individual residing in the State of New York with an address at 3902 Anne Drive, Seaford, New York 11783.

20.     Defendant Gracie Square Funding, Inc. is a domestic business corporation organized under the laws of the State of New York with addresses at 3902 Anne Drive, Seaford, New York 11783 and 38 Saint Roche Avenue, Unit G, Greenwich, CT 06830.

21.     Defendant Genevieve Cancel is an individual residing in the State of New York with an address at 3902 Anne Drive, Seaford, New York 11783.

22.     Defendant Harbor Vista Corp. is a domestic business corporation organized under the laws of the State of New York with addresses at 35 Cottonwood Road, Port Washington, New York 11050 and PO Box 2133, Port Washington, New York 11050 and PO Box 5194, Greenwich, Connecticut 06831.

23.     Defendant Laurie Mendelson is an individual residing in the State of Connecticut with an address at 38 Sainte Roche Avenue, Unit G, Greenwich, Connecticut 06830.

24.     Defendant Mendelson is the girlfriend of defendant Pomerantz.

25.     Defendant Mendelson is retired and works part-time at a clothing store and, upon information and belief, does not contribute financially to the household income of Pomerantz and Mendelson.

26.     Defendant Mendelson knew or should have known about the substantial changes in her lifestyle.

27.     Defendant C.B.K. Consultants Inc. a/ka CBK Consultants Inc. is a domestic business corporation organized under the laws of the State of New York with an address at PO Box 2133, Port Washington, New York 11050 and/or 42 Harbor Road, Port Washington, New York 11050-2548 or 244 East 75th Street, New York, New York 10021.

28.     Defendant Jonathan Pomerantz a/k/a Jon Pomerantz is an individual with a last known address at 2540 30th Rd, Astoria, New York 11102-2683.

29.     Defendant Maria Horvath is an individual with a last known address at 3383 Campbell Dr, Bronx, New York 10465-1347.

30.     Defendant Elizabeth Pomerantz is an individual with a last known address at 8 Garrison Street, Apt 604, Boston, MA 02116-5719.

31.     Defendant Cathy Bombardiere is an individual with a last known address at 65 Roberts Drive, Staten Island, New York 10306-5617.

32.     Defendant Eli Wilner & Co., Inc. is a company with a last known address at 1525 York Avenue, New York, New York 10028.

33.     Defendant Four Heirs Inc. is a company with a last known address at 59 Cinque Drive, Farmingdale, New York 11735

34.     Defendant M Park Capital LLC (Joseph Gallace) is a company with last known addresses at 2057 Central Drive S., East Meadow, New York, 11554 and 547 Hewlett Street, Franklin Square, New York 11010.

35.     Defendant Jessica Flores is an individual with last known addresses at 547 Hewlett Street, Franklin Square, New York 11010 and 305 Odessa Lane, Dublin, OH 43017-1330.

36.     Defendant Daniel Burko is an individual with a last known address at 196 S 1st Street, Lindenhurst, New York 11757.

37.     Defendant David Walsh is an individual with a last known address at 9 Elm Rock Road, Bronxville, New York 10708-4202.

38.     Defendant Extranet Venture Partners LLC is a limited liability company with a last known address at 14 Washington Avenue, Brentwood, New York 11717.

39.    Defendant Bowl Crew LLC is a domestic limited liability company with last known addresses at 80 State Street, Albany, New York, 12207 and 3902 Anne Drive, Seaford, New York 11783 and 11 West Main Street, Babylon, New York 11702.

40.    Defendant Amy Chanos is an individual with last known addresses at 205 E 78th Street, Apt. 15h, New York, New York 10021 and 400 East 59th Street New York, New York 10022-2342.

41.    Upon information and belief, defendant APEX Clearing Corporation a domestic business corporation organized under the laws of the state of New York with an address at 888 7th Avenue, 32nd Floor, New York, New York 10106 and 28 Liberty Street, New York, New York 10005.

42.    Defendant L&L Designs Inc. a/k/a Laura Michaels Design is a company with a last known address at 3 Riversville Road, Greenwich, Connecticut 06831.

43.    Defendant Ardsley Ventures, LLC is a limited liability company with a last known address at 1100 Ardsley Rd, Charlotte, NC, 28207-1818 or 5546 Old Thompson Rd., Norwood, NC 28128.

44.    Defendant 38 St Roch, LLC is a limited liability company with a last known address at 38 St Roch Avenue, Unit F, Greenwich, CT 06830.

45.    Defendant Grace Bay Club has a last known address at Grace Bay Circle, Dr, TKCA 1ZZ, Turks & Caicos Islands.

46.    Defendant Migdal Management is a company with a last known address at 2765 W 5th St, Brooklyn, NY 11224.

47.    Defendant Sante Santapadre is an individual with a last known address at 59 Cinque Drive, Farmingdale, New York 11735.

9

48. Defendant J.P. Morgan Chase Bank, N.A. is a federally chartered banking institution with an address at 115 Broadhollow Road, Melville, New York 11747.

49. Defendant Citibank, N.A. is a federally chartered banking institution with an address at 4881 Merrick Road, Massapequa Park, New York 11762.

50. Upon information and belief, several attorneys, accountants and other professionals are in possession of or were paid using stolen funds.

51. The Unnamed Defendants are those currently unknown beneficiaries, and/or additional or immediate or mediate transferees of any part of the Total Transfers (as defined below), individuals or entities holding property of the Debtor's bankruptcy estate, as well as any other individual or entity who conspired with one or more of the Defendants to defraud Debtor's creditors and/or received any part of the Total Transfers.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

52. Pursuant to 11 U.S.C. § 704(a)(1), the Trustee must, inter alia, "investigate the financial affairs of the debtor" and "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest".

53. In furtherance of his efforts to collect and reduce to money the property of the estate, the Trustee is pursuing numerous claims against individuals and entities to recover or "claw back" voidable or fraudulent transfers of money or property made by the Debtor in furtherance of the Debtor's operation of a fraudulent scheme.

54. The Trustee seeks to avoid both the transfers made from the Debtor to Gracie Square as an initial or immediate transfer, and the transfers from Gracie Square to the Gracie Square Defendants and the other Defendants as immediate or mediate transferees.

10

55.     Gracie Square acted as a mere conduit to the Gracie Square Defendants and the Other Defendants.

56.     The Trustee seeks to collapse the Gracie Square transactions since those transactions acted as mere conduits to the investments with the Debtor and the fraud the Gracie Square Defendants engaged in with the Debtor.

57.     The Trustee relies upon the broad authority granted by 11 U.S.C. §§323, 541, 542, 541, 544, 548, 550 and 551, to pursue recovery for the benefit of the estate and its creditors.

58.     Pursuant to the Contempt Order, Gracie Square and Pomerantz have been held in civil contempt of the Court and sanctioned $500 per day [Dkt. No. 386].

A.     **The Debtor's Fraudulent Scheme**

59.     For years prior to the Petition Date, the Debtor engaged in a scheme whereby he sought money from individuals or entities, in the form of loans or investments ("Investors"), for the purported purpose of purchasing lots of jewelry ("Jewelry Lot Sheets") by and through his d/b/a, LNA Associates Ltd. ("LNA") (the "Ponzi Scheme").

60.     Based on the Trustee's investigation, and at all times relevant hereto, the Debtor engaged in the Ponzi Scheme to defraud Investors and obtain money from those Investors by means of materially false and fraudulent statements, pretenses, and representations involving the purchase and sale of Jewelry Lot Sheets.

61.     Based on the Trustee's investigation, and at all times relevant hereto, people and entities lent money to, or invested money in the Ponzi Scheme in reliance upon the Debtor's materially false and fraudulent statements, pretenses, and representations.

62.     Based on the Trustee's investigation, and at all times relevant hereto, to further and continue the Ponzi Scheme, the Debtor repeatedly and knowingly solicited investments, and

used money obtained from new investors to fund the payments made to previous investors, and to enrich himself and others.

63.    Based on the Trustee's investigation, and at all times relevant hereto, the Debtor repeatedly and knowingly solicited investments, and used money obtained from new investors to continue operations, pay earlier investors, make other transfers, and to otherwise perpetuate and continue the Ponzi Scheme.

64.    Based on the Trustee's investigation, and at all times relevant hereto, investors were promised returns which ranged from as low as 30% per year to as high as 450% percent per year.

65.    The Gracie Square Defendants have been involved in the Debtor's fraud since mid-2017.

66.    The Gracie Square Defendants were among the initial investors with the Debtor.

67.    The Gracie Square Defendants invested with the Debtor starting in June 2017 through November 2019, a period of twenty-nine (29) months.

68.    Based on the Trustee's investigation, and at all times relevant hereto, the payments to individuals by the Debtor constituted intentional misrepresentations of fact regarding the underlying loans and were an integral and essential part of the fraud.

69.    Based on the Trustee's investigation, and at all times relevant hereto, the continued payments to Investors allowed the Ponzi Scheme to continue to operate undetected, and to thereby retain existing money received from previous Investors and to continue to lure new Investors into the Ponzi Scheme.

70.　　Based on the Trustee's investigation, and at all times relevant hereto, the Ponzi Scheme continued until such time that the repayment due to earlier Investors overwhelmed the flow of new money received from new Investors, causing the collapse of the Ponzi Scheme.

71.　　During the four-year period prior to the Petition Date, the Debtor had limited earned income and limited sources of cash aside from money solicited and received from new or additional defrauded Investors.

72.　　The Debtor did not maintain any legitimate business operations.

73.　　Upon information and belief, the Debtor did not purchase jewelry under the Jewelry Lot Sheets as contemplated by the agreements with Defendants

74.　　Upon information and belief, the Gracie Square Defendants knew or should have known the Debtor did not have any legitimate business operations.

75.　　Based on the Trustee's investigation, and at all times relevant hereto, the Debtor had liabilities which exceeded his assets.

76.　　During the time period of the Gracie Square Transfers (as defined below) from June 1, 2017 to the Petition Date (the "Gracie Square Time Period"), based on the Trustee's investigation and a review of the Debtor's records, which is still continuing, the Debtor never purchased any wholesale jewelry, jewelry in bulk or large lots of jewelry for the purpose of repaying investors in connection with Gracie Square transactions.

77.　　Defendants Gracie Square, Pomerantz and Ed Horvath were intricately involved in the Debtor's financial transactions and attended dozens of meetings with the Debtor during the Gracie Square Time Period.

13

**B.**     **The Bankruptcy Filing, Appointment of the Trustee and Denial of Discharge**

78.     On April 28, 2020 ("Petition Date"), an involuntary petition ("Involuntary Petition") for relief pursuant to Chapter 7 of the Bankruptcy Code was filed against the Debtor. See Dkt. No.[3] 1.

79.     On April 29, 2020, the Clerk of the Court issued a Summons to Debtor in Involuntary Case ("Summons"). See Dkt. No. 2. On that same date, the Involuntary Petition and Summons were served on, *inter alia*, the Debtor. See Dkt. No. 3.

80.     As a result of a motion filed on May 1, 2020, on May 6, 2020, the Court entered an Order, *inter alia*: (a) granting relief under Chapter 7 of the Bankruptcy Code against the Debtor; and (b) directing the appointment of a Chapter 7 Trustee for the Debtor. See Dkt. No. 12.

81.     On May 6, 2020, Plaintiff was appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate. See Dkt. No. 13.

82.     Pursuant to a Stipulation and Order dated August 10, 2020, the Debtor's discharge under section 727 of the Bankruptcy Code was denied. See Dkt. No. 67.

**C.**     **The Criminal Case Against the Debtor and the Debtor's Plea of Guilty**

83.     On July 9, 2020, the United States of America filed a sealed indictment against the Debtor in the United States District Court for the Eastern District of New York ("District Court"). See, generally, USA v. Altieri, E.D.N.Y. Case No.: 1:20-cr-00249-BMC-1. By Amended Order dated July 14, 2020, the indictment was unsealed. See DC ECF[4] No. 3.

---

[3]     References to "Dkt. No." shall mean docket entries in the Debtor's Chapter 7, Case No. 20-71951-REG.
[4]     References to "DC ECF" shall mean docket entries in the criminal case against the Debtor, i.e., USA v. Altieri, E.D.N.Y. Case No.: 1:20-cr-00249-BMC-1.

84.     The indictment accused the Debtor of fraudulently persuading more than 80 individuals and entities to make investments totaling between approximately $75 million and $85 million. <u>See</u> DC ECF No. 1.

85.     The indictment accused the Debtor of fraudulently telling investors that LNA generated profits by purchasing jewelry in bulk at "closeout" prices and then reselling that jewelry at higher prices, and promising that investments would be used only for this purpose. <u>See</u> DC ECF No. 1.

86.     The indictment claimed that the Debtor did not invest all of the investors' money in jewelry purchases by LNA and that most of the purchases the Debtor claimed were made by LNA were never made at all. <u>See</u> DC ECF No. 1.

87.     The indictment claimed that LNA did not generate the profits that the Debtor claimed, and most of the money paid by the Debtor to certain investors as a "return" on their investment did not represent purchases and sales of jewelry. <u>See</u> DC ECF No. 1.

88.     The indictment accused the Debtor of using money from some investors to pay other investors. <u>See</u> DC ECF No. 1.

89.     On December 30, 2020, at the Debtor's plea hearing, the Debtor pled guilty to Count I in the indictment (the "<u>Plea Hearing</u>").

90.     The Debtor admitted to operating a Ponzi Scheme.

91.     At his Plea Hearing, the Debtor admitted that he did not purchase any jewelry in connection with his transactions with Defendants.

92.     As of the date of this Complaint, the Debtor has not been sentenced.

93.     This Court's Contempt Order and the sanction contained therein is clearly not enough to compel defendant Gracie Square and Pomerantz to comply with the Trustee's request for documents.

94.     The Gracie Square and Pomerantz have played an excellent game with the Trustee filing frivolous motion and objection after another.   This was aimed at protecting the development of the Franklin Square Project and its sale.

**D.** **Gracie Square Bank Statements and Tax Returns**

95.     Based on a review of the financial documents the Trustee has in his possession, the bank statements for Gracie Square tell a completely different picture from the filed tax returns.

96.     The tax returns for Gracie Square provide that its gross receipts for the years provided is contained below.

| Year | Gross Receipts |
|------|----------------|
| 2018 | $ 206,650.00 |
| 2019 | $ 140,350.00 |
| **TOTAL** | **$ 347,000.00** |

97.     A review of the Chase bank account summary for defendant Gracie Square is contained below.

| Year | Receipts | Disbursements |
|------|----------|---------------|
| 2017 | No Data | |
| 2018 | $     5,296,830.00 | $     5,398,494.86 |
| 2019 | $     6,415,500.00 | $     6,421,737.49 |
| 2020 | $        132,650.00 | $        199,399.78 |
| 2021 | $            6,250.00 | $           6,000.00 (Limited Data) |
| **TOTAL** | **$   11,851,230.00** | **$   12,025,632.13** |

98.    The Harbor Vista tax returns for defendant Harbor Vista show gross receipts as follows:

| Year | Amount |
|---|---|
| 2017 | $ 181,159.00 |
| 2018 | $ 126,733.00 |
| 2019 | $  99,500.00 |
| **TOTAL** | **$ 407,392.00** |

99.    A review of the Chase and Citibank account summary for defendant Harbor Vista is contained below.

| Year | Gross Receipts |
|---|---|
| 2017 | $    364,042.40 |
| 2018 | $    872,087.37 |
| 2019 | $    561,585.94 |
| **TOTAL** | **$  1,797,715.71** |

100.    The Gracie Square Defendants are wrongfully in possession of millions of dollars obtained through the Debtor's Ponzi Scheme.

101.    The Gracie Square is disposing of the Transfers to keep them beyond the reach of the Trustee.

102.    The defendants Pomerantz and Horvath are engaging in a conspiracy to defraud their largest creditor – the Debtor's estate.

103.    The Gracie Square Defendants have no defense to the claims asserted herein.

104.    The Gracie Square Defendants have failed to turn over crucial documents and information to the Trustee as to the disposition of certain assets.

105.    The Gracie Square Defendants have engaged in a consistent pattern of delay, obfuscation and paying sanctions because the prize is larger than the sanction.

106.    The Gracie Square Defendants have engaged in a methodical thought-out plan and strategy to frustrate the administration of the estate.

107.    Defendant Gracie Square, a company which appears to be engaged in a labyrinth of transfers in and out of its bank account, has no payroll, no employees, and no business model.

108.    Defendant Gracie Square applied for and received a government Paycheck Protection Program Loan and other loans (the "PPP Loans").

109.    With respect to the Small Business Administration loan, on June 3, 2020 Gracie Square received $100,300.00. Gracie Square appears to have used it for improper purposes.  Set forth herein is an analysis of deposits made into the Gracie Square account regarding the PPP Loans and the disposition of the loan proceeds.

110.    This Court entered a Contempt Order dated April 8, 2021 directing Gracie Square and Pomerantz to comply with the Court's directives (the "Contempt Order") [Dkt. No. 386].

111.    Despite repeated demand, and assurances that the documents are forthcoming, the Gracie Square Defendants have failed to fully comply and turn over crucial documents to the Trustee.

112.    During the period January 1, 2017 to the present, Gracie Square Defendants are believed to be net winners as follows:

| Name | Amount |
|---|---|
| Gracie Square | $ 2,917,500.00 |
| Harbor Vista | $ 1,256,210.94[5] |
| C.B.K. Consulting Inc. | $      85,000.00 |
| Edward Horvath | $ 1,765,325.37[6] |
| Laurie Mendelson | $    992,500.00 |
| Genevieve Cancel | $    236,489.94 |
| Maria Horvath | $      49,500.00 |
| Elizabeth Pomerantz | $      10,700.00 |

---

[5]    The amounts to Harbor Vista, C.B.K., Horvath, Mendelson, Pomerantz and Cancel were transferred from Gracie Square. The amount to Maria Horvath was transferred from Gracie Square to Harbor Vista to Maria Horvath.

[6]    These amounts were funneled to him from Gracie Square and Harbor Vista.

113.    The Gracie Square Defendants are net winners of transfers made from the Debtor to Gracie Square.

114.    Gracie Square took its transfers from the Debtor and transferred it to friends, shell companies and relatives.

115.    Pomerantz and Horvath have been intricately involved in the Debtor's financial transactions practically since inception and invested through several corporate entities and through Pomerantz's girlfriend defendant Mendelson.

116.    Defendant Gracie Square transferred its assets to the Gracie Square Defendants and to other "shell companies" like defendants Harbor Vista and C.B.K..

117.    According to the Debtor, Pomerantz would routinely threaten him with civil remedies of contacting the Security and Exchange Commission ("SEC"), the local banking authorities and people he knew unless the Debtor would continue to make payments and pay exorbitant fees.

118.    As a result of the fraudulent scheme, the foregoing transactions between the Debtor and the Gracie Square Defendants should be collapsed and each of the Defendants should be deemed to be initial transferees of the Total Transfers, or entities for whose benefit the fraudulent transfers were made, pursuant to Bankruptcy Code section 550(a)(1).

119.    Alternatively, if the Defendants are held not to be the initial transferees or beneficiaries under Bankruptcy Code section 550(a)(1), then each of the Defendants are immediate or mediate transferees under Bankruptcy Code section 550(a)(2).

120.    The Gracie Square Defendants should be restored to their financial position before they met the Debtor.

121.    The Gracie Square Defendants'' "catch me if you can game" should end with an order providing injunctive relief over all their assets, personal and corporate, including the Franklin Square Property.

122.    Despite repeated demand, Pomerantz has failed to turn over the millions of dollars in transfers that he and his girlfriend Mendelson have received as a conduit to the Debtor's Ponzi Scheme.

123.    Every dollar the Gracie Square Defendants purportedly "earned," and every dollar they kept to unjustly enrich themselves, was derived from money taken from defrauded investors, both through the Debtor and through Pomerantz's maneuvering of Gracie Square.

124.    Every asset the Gracie Square Defendants own that originated from the purported operation of Gracie Square was drawn from fictitious profits, never earned and must be returned to the Trustee for distribution to the creditors of this estate.

125.    Based on the Trustee's investigation to date, the Gracie Square Defendants may have had knowledge of the Debtor's fraud, and ignored many of the "red flags" indicating the likelihood of that fraud.

126.    The Gracie Square Defendants ignored the "red flags" of the Debtor's fraud using plausible deniability and conscious avoidance knowledge.

127.    The Gracie Square Defendants did not properly, independently, and reasonably investigate or perform any due diligence into the Debtor's business practices.

128.    The Gracie Square Defendants remained ignorant to the Debtor's Ponzi Scheme.

129.    Gracie's counsel has filed frivolous pleadings, late pleadings, and has even failed to respond to pleadings.

130.    Gracie Square did not turn over its initial documents requested under the subpoena and required the Trustee to file several motions to obtain documents.

131.    It took over sixty (60) days to schedule the deposition of Gracie Square and Pomerantz.

132.    Instead of complying with the Court's Minute Entry and Order of March 3, 2021, Gracie Square and Pomerantz, through counsel, filed a late application for a protective order [Dkt. No. 326].

133.    The morning of the adjourned Contempt Hearing, Gracie Square filed a motion to vacate the Contempt Order [Dkt. No. 438].

**E.    The Contempt Motion and Contempt Hearing**

134.    On March 1, 2021, the Trustee filed an Order Scheduling a Hearing and Affirmation in Support requesting an emergency hearing asking this Court to order Gracie Square to comply with the Document Subpoena (the "Contempt Motion") [Dkt. Nos. 316 and 317].

135.    The Contempt Motion requested that the Court enter an Order: (a) directing Gracie Square to comply with the Court's Rule 2004 Order [Dkt. No. 60], and Document Subpoena; (b) compelling discovery; (c) holding Gracie Square, by Larry Pomerantz, in contempt for its failure to comply; and (d) awarding the payment of attorneys' fees and costs from Gracie Square in connection with the Motion for Contempt.

136.    A hearing was held on March 3, 2021 (the "Contempt Hearing").

137.    On January 11, 2021, the Trustee's counsel conducted the Rule 2004 examination of Pomerantz (the "Pomerantz Deposition"). When Pomerantz was asked about specific document requests, he testified that his lack of production was due to "advice of counsel".

21

138.    Pomerantz testified several times that he either did not produce the documents on the advice of counsel or because they were "unduly burdensome".

139.    Despite numerous efforts, from the initial Subpoena served in October 2020, Gracie Square and Pomerantz have been recalcitrant and uncooperative with the Trustee.

140.    Gracie Square had no intention to cooperate with the Trustee's investigation or to comply with the Subpoena absent an Order of the Court.

141.    Upon information and belief, Pomerantz and Horvath requested time to transfer, conceal, encumber or get rid of the assets, including the Franklin Square Property.

142.    On February 5, 2021, the Trustee followed up with Gracie Square requesting the production of documents.  Gracie Square ignored the deadline.

143.    At the Contempt Hearing held on March 3, 2021, the Court directed Gracie Square to provide the following:

> Hearing Held; (RE: related document(s) 317 Order to Schedule Hearing, 316 Motion to Compel Filed by Trustee R. Kenneth Barnard) Appearance: Joseph Maniscalco & Marc Pergament, Nina LaMonica & Larry Pomerantz: Granted to turnover taxes within 5 days; All Bank Statements or letter as to why it's not available withing 48 hours; What you do and don't have within 48 hours; Get all Bank Statements or a letter saying why some are available in the next 48 hours; If you hired a Third Party agree on directions-to pay or Court will intervene; Not issuing a contempt order now but may in future, any problem get back to Chambers and will resolve. (mtt) (Entered: 03/03/2021). See Dkt. Entry dated March 3, 2021 Minute Entry and Order (the "Minute Entry and Order").

144.    Instead of complying with the Minute Entry and Order, Gracie Square filed a late application for a protective order (the "Application") [Dkt. No. 326].

145.    On or about February 23, 2021, the Franklin Square Property went into contract to be sold.

146.    Defendants Pomerantz and Horvath knew the date of the Frank Square Contract sale.

147.    In that application, Gracie Square simplistically asserted that the documents sought are "totally unrelated to the Trustee's investigation." <u>See</u> application at pp. 2-3, ¶ 8 [Dkt. No. 326].

148.    Defendant Gracie Square filed that application merely for the purpose of delaying the production of the most important piece of the puzzle – the trail of what Gracie Square did with the money.

149.    On March 5, 2021, Gracie Square and Pomerantz turned over limited documents and its counsel admitted that he was waiting on cancelled checks.

150.    A review of the production from Gracie Square on March 5, 2021 reveals that actual checks turned over at that time were part of a reconstruction from Chase and produced to Gracie Square or counsel on October 2, 2020 and October 4, 2020 by Chase sequence number 4670983310.[7]

151.    On March 16, 2021, Gracie Square and Pomerantz turned over some additional documents.  Again, none of the documents requested in the Contempt Motion were produced.[8]

152.    On March 22, 2021, counsel asked the Trustee for an adjournment of the hearing on the Contempt Motion scheduled for March 24, 2021 **if** Gracie Square fully complied with the Minute Entry and Order by the end of that week – March 26, 2021.  The Trustee agreed.  As a result, the hearing was adjourned to April 5, 2021.

153.    Defendant Gracie Square did not produce the documents promised on March 22, 2021 by the March 26, 2021 deadline.

---

[7]      This shows that, not only did Gracie Square and perhaps counsel have these documents almost five (5) months before, counsel's letter is false that he is waiting for the additional checks.

[8]      As the Trustee just learned of the Franklin Square Property Contract date of February 23, 2021, all of the delays make sense and appear intentional.

154.     Despite the promise and representation of counsel, the documents were not turned over.

155.     On April 5, 2021, the Court held the adjourned hearing on the Contempt Motion and again directed the Witness to promptly comply with the Subpoena, the Rule 2004 Order, the Minute Entry and Order and prior directives.  At the adjourned hearing, counsel indicated he was working on compliance and would produce the documents. This did not occur.

156.     On April 8, 2021, the Trustee directed the submission of an affirmation of non-compliance of the Court's Minute Entry and Order dated March 3, 2021 and the Court's further directive on April 5, 2021 [Dkt. No. 382] (the "Non-Compliance Affirmation").

157.     Gracie Square and Pomerantz did not file an objection to the Non-Compliance Affirmation. On April 8, 2021, the Court entered the Contempt Order [Dkt. No. 386]. See Exhibit A to the Application.

158.     On May 5, 2021, the Court held yet another adjourned hearing on the Contempt Order.  The morning of the hearing, Gracie Square and Pomerantz filed a motion to vacate the Contempt Order without any evidence, affidavit, declaration or ability for it to remotely be considered by the Court.

159.     Due to the civil threats, according to the Debtor, the Debtor would submit to the demands and pay Pomerantz cash and huge unwarranted late fees.

160.     Gracie Square and Pomerantz did not file an objection to the Non-Compliance Affirmation.

161.     On April 8, 2021, the Court entered the Contempt Order [Dkt. No. 386].

162.    On May 17, 2021, the Trustee directed a Rule 11 Safe Harbor letter (the "<u>Safe Harbor Letter</u>") to counsel and outlined the continued deficiencies and false statements made by counsel on the record.

163.    The Trustee has not received a response to the Safe Harbor Letter.

**F.    <u>Background of Gracie Square's Business and the Gracie Square Defendants</u>**

164.    Defendant Gracie Square was controlled, directed and managed by Pomerantz.

165.    Defendant Gracie Square is owned by Pomerantz and defendant Cancel, the wife of Horvath.

166.    Pomerantz set up C.B.K. Consultants Inc.

167.    Despite defendant C.B.K. having periods in its name with the secretary of state, Pomerantz and/or Horvath opened a bank account without the period after each of the initials.

168.    Upon information and belief, Pomerantz and/or Horvath opened the bank account with a slight variation from the secretary of state in order to avoid a restraining notice, judgment or collection effort against the bank account.

169.    Pomerantz and Horvath set up Harbor Vista Corp.

170.    Gracie Square took substantial money in, received and moved it around to these other shell entities.

171.    Despite demand, Harbor Vista has failed to comply with its subpoenas.

172.    Despite demand, C.B.K. Consultants Inc. has failed to comply with its subpoenas.

173.    While Defendant Gracie Square asserts it used other people's money, it never produced any documents with its alleged investors.

174.    Upon information and belief, Pomerantz did not provide any documentation to the Gracie Square Defendants or other Defendants.

175.    Based on the banking activity, defendants Gracie Square, Pomerantz and Horvath may have been running their own separate Ponzi Scheme using the Debtor and the stolen money the Debtor obtained from other investors.

176.    The Gracie Square Defendants knew or should have known that they were deceiving other Defendants by the manner in which they described or represented the investments with the Debtor.

177.    Defendant Gracie Square was a mere conduit of the Gracie Square Defendants.

178.    Defendant Gracie Square did not have an operating agreement.

179.    Defendant Gracie Square did not maintain books and records.

180.    Defendant Gracie Square did not maintain any minutes of meetings.

181.    Defendant Pomerantz did not look into the Debtor's business dealings and was involved since inception.

182.    Defendants Pomerantz and Horvath did not engage in any due diligence regarding the Debtor.

183.    The Gracie Square Defendants did not ask the Debtor for accounts receivable ledgers, inventory listings, proof of purchase, proof of delivery, purchase orders or anything else related to the investments into the Debtor.

184.    The Gracie Square Defendants knew or should have known the investments with the Debtor were not realistic.

185.    Upon information and belief, none of the Gracie Square Defendants ever asked for backup documents.

186.    Upon information and belief, none of the Gracie Square Defendants asked for inventory controls.

187.    Upon information and belief, none of the Gracie Square Defendants ever asked for purchase orders or to speak to anyone the Debtor was allegedly buying the jewelry from in any way.

188.    Upon information and belief, the Gracie Square Defendants never asked the Debtor for tax returns, financial documents, profit and loss statements, balance sheet or any other documents to justify their investments.

189.    All Defendants are sophisticated investors and business people with extensive business experience and backgrounds.

**The Flow of Money Transfers**



190.    The Gracie Square Defendants were not victims of the Debtor's fraud.

191.     The Debtor did not have any knowledge of the business transactions or behavior of the Gracie Square Defendants, including Pomerantz and Horvath.

192.    Defendants Pomerantz and Horvath controlled all of the decisions of defendants Gracie Square, C.B.K. and Harbor Vista.

193.    The Debtor did not have any knowledge of the inner workings of the Gracie Square Defendants.

194.    Defendant Gracie Square had no legitimate business operations and was used as a mere instrumentality of the Debtor's fraud.

**G.      The Gracie Square Defendants are Clear Net Winners in the Amount of $2,719,500**

195.      The Debtor transferred to defendant Gracie Square the sum of $6,396,500 (MM) of which Gracie Square is a net winner in the amount of $2,719,500 (MM).

196.      Defendant Gracie Square is a mere conduit of the Gracie Square Defendants. There is clear and unequivocal evidence that the Court should collapse the transactions between the Debtor and Gracie Square so that the money flow goes directly to the Gracie Square Defendants and the remaining Defendants.

**H.      C.B.K. and Harbor Vista Should Be Compelled to Produce Bank Documents**

197.      Defendant Gracie Square, managed, controlled and directed by Pomerantz and Horvath, have manipulated the behavior and simply transferred the money out of the Gracie Square bank account to defendants C.B.K. Consulting, Harbor Vista, and other entities they control.

198.      As of the date hereof, defendants C.B.K. Consulting and Harbor Vista have failed to comply with the outstanding Subpoena issued on each of them.

199.      According to the pleadings, testimony and facts, defendant Gracie Square had responsive documents in its possession and refused to provide them to the Trustee.

200.      According to the pleadings, testimony and facts, defendant Gracie Square, failed to provide documents in order to create separation from the time they disposed of the assets.

201.      The Gracie Square Defendants have known the extent of Transfers they received from the Debtor since prior to the Filing Date.

202.      Trustee's counsel provided documents and information over the last nine (9) months to counsel to the Gracie Square Defendants as to the extent of the net winnings that the Gracie Square Defendants received.

## I.    The Additional Transfers Made To Other Gracie Square Defendants

203.    Gracie Square was utilized as a mere conduit and made payments to other Gracie Square Defendants including Horvath, Harbor Vista, Mendelson, Pomerantz and other family members.

204.    Based on a review of the sparse documents turned over by Harbor Vista and C.B.K., there are extensive financial documents missing that have not been disclosed.

205.    Defendant Harbor Vista has failed to disclose to the Trustee under the issued Harbor Vista Subpoena Unknown Deposits of $738,821.51, and Unknown Withdrawals of $623,594.05 from its bank account.

## J.    Transfers from Gracie Square to Defendant Harbor Vista

206.    Defendant Harbor Vista appears to be a company owned and controlled by Pomerantz and Horvath, the co-conspirators and received the following Transfers from Gracie Square.

207.    Harbor Vista received $1,256,210.94 from Gracie Square and transferred back to Gracie Square $455,000, making Harbor Vista a net winner in the amount of $801,210.94 (collectively, the "Harbor Vista Transfers").

208.    Gracie Square and Harbor Vista are alter egos of each other.

209.    Gracie Square and Harbor Vista are owned and controlled by the same individuals, the co-conspirators Pomerantz and Horvath.

210.    Upon information and belief, Gracie Square and Harbor Vista do not have any written documentation between the two entities about the transfers made back and forth.

211.    Upon information and belief, Gracie Square did not maintain any books and records related to its transfers with Harbor Vista.

212.    Upon information and belief, Harbor Vista did not maintain any books and records with respect to its transfers with Gracie Square.

**K.    Transfers from Gracie Square to Defendant C.B.K. Consulting**

213.    C.B.K. Consulting is another shell company controlled by Pomerantz and Horvath and received money for the Debtor directly and indirectly through Gracie Square.

214.    Defendant Gracie Square transferred $85,000 to defendant C.B.K. which emanated from the Gracie Square Transfers (collectively, the "C.B.K. Transfers").

215.    C.B.K. and Gracie Square are alter egos of each other.

216.    Gracie Square and C.B.K. are owned and controlled by the same individuals, the co-conspirators Pomerantz and Horvath.

217.    Upon information and belief, Gracie Square and C.B.K. do not have any written documentation between the two entities about the transfers made back and forth.

218.    Upon information and belief, Gracie Square did not maintain any books and records related to its transfers with C.B.K..

219.    Upon information and belief, C.B.K. did not maintain any books and records with respect to its transfers with Gracie Square.

**L.    The Gracie Square Defendants Use the Fraudulent
       Profits to Purchase the Franklin Square Property**

220.    Based on a review of the recent records turned over by defendant Gracie Square, the Trustee learned that Gracie Square has been involved in the Franklin Square Property transferring money it received from the Debtor to fund the development of that home.

221.    Based on the records, Gracie Square took a portion of the stolen money it received from the Debtor and financed the development of the Franklin Square Property.

222.   According to the bank records that Gracie Square only recently turned over, Gracie Square spent at least $203,365.40 on the Franklin Square Property - 547 Hewlett Street.

223.   The Franklin Square Property is owned by Jessica Flores.  She has been on the deed since 2013.

224.   Defendant Jessica Flores has received at least the sum $43,265.40 from Gracie Square with the memo of the checks including "Mortgage of 547 Hewlett Street", "permit fee" and "TOH Permit".

225.   Defendant Gracie Square used the money it received from the Debtor to transfer money to defendant Jessica Flores.

226.   The total transfers made to or for the benefit of the Franklin Square Property which emanated from the Debtor in amount to be determined after full disclosure, but in no event believed to be less than $203,000 (the "Franklin Square Transfers").

227.   Defendant M Park is owned by an individual named Joseph Angelo Gallace.

228.   Defendant M Park (Joseph Gallace) is the developer of the Franklin Square Property.

229.   The Gracie Square Defendants used the fraudulent profits received from the Debtor to purchase and renovate the Franklin Square Property.

230.   The Gracie Square Defendants used the Gracie Square Transfers to purchase assets, including the Franklin Square Property.

231.   Defendant Pomerantz used the Gracie Square Transfers to pay the utilities, renovations, development and all other expenses associated with the Franklin Square Property including monthly mortgage payments.

232.    Upon information and belief, a contract to purchase the Franklin Square Property was signed on or about February 23, 2021 and is ready to be sold (the "Franklin Square Contract")

233.    The proceeds from the Franklin Square Contract are property of the estate.

234.    The Franklin Square Property is property of the estate and should be immediately seized and prevented from selling.

235.    Defendant Pomerantz used the Gracie Square Transfers he received from the Debtor to pay the mortgage, utilities, renovations, development and all other expenses associated with the Franklin Square Property including monthly mortgage.

236.    The proceeds from the Franklin Square Contract are property of the estate and all payments made to or for the benefit of the Franklin Square Property from 2019 to the present can be traced to the Gracie Square Transfers and the money Pomerantz and Horvath obtained from the Debtor.

**M.    The Paycheck Protection Program Loans**

237.    Defendant Gracie Square applied for the government Paycheck Protection Program Loan and other loans (the "PPP Loans").

238.    With respect to the Small Business Administration loan, on June 3, 2020, Gracie Square received $100,300.00.

239.    Upon information and belief, defendant Gracie Square used the PPP Loans for improper purposes.

**N.**    **Pomerantz and Horvath Engaged in Extensive Cash Transactions With the Debtor**

240.    Based on a review of the current available documents, the Gracie Square Defendants have withdrawn the sum of approximately $184,300 in cash [U.S. currency] from their respective bank accounts.

241.    According to the Debtor, he met Pomerantz often and delivered extensive cash to him.

242.    According to the Debtor, Pomerantz demanded large amounts of cash [U.S. currency] from the Debtor and would impose late fees and thereafter civil sanctions.   According to the Debtor and others, Pomerantz and Horvath were involved in cash transfers [U.S. currency] from early on in 2017.   According to the Debtor, he would meet Pomerantz at a Starbucks, in Woodbury and hand him envelopes of cash.   According to the Debtor, each time he handed cash to Pomerantz, he told Pomerantz the amount of cash that was in the envelope.

243.    According to the Debtor, he delivered $150,000 in cash to the Horvath's home.

244.    Based on the Debtor's books and records and the Trustee's investigation, the Debtor generated cash [U.S. currency] from other investors and by cashing checks with a check cashing company.

245.    Both Pomerantz and Horvath were involved in the Debtor's financial transactions practically from inception and the Trustee believes that defendants Pomerantz and Horvath knew the Debtor was cashing checks at a check cashing company.

246.    According to the Debtor, he drove his car to Horvath's home and delivered a black bag with $150,000 of in cash [U.S currency].

247.    According to the Debtor, he knew the address of the Horvath as he had been there before and even met in the Debtor's backyard with another individual.

248.    According to the Debtor, he contacted defendant Horvath from his cell phone to advise him he was in front of his house and when he arrived at defendant Horvath's home, defendant Horvath came to the Debtor's car and the Debtor opened his passenger window and handed defendant Horvath a black bag with $150,000 in cash [U.S. currency] in the bag.

249.    According to the Debtor, defendant Horvath was polite and very thankful and asked "when is the next batch coming", to which the Debtor responded, "note sure". The Debtor remembers this being a warm sunny day.  Apparently, he told defendant Horvath this is the $150,000 and would always announce to defendant Horvath the amount of cash he was bringing to him.

250.    According to the Debtor, he provided additional cash to defendant Horvath aside from the $150,000 identified above by meeting him on at least three to four occasions at the "On Parade Diner", located at 7980 Jericho Turnpike, Woodbury, NY in the back parking lot. He would meet defendant Horvath in the back of the parking lot during the afternoon and that defendant Horvath drove a white Lexus SUV vehicle.

251.    According to the Debtor, he would never get out of his car and defendant Horvath would come to the Debtor's passenger window and the Debtor would hand him the cash [U.S. currency].

252.    According to the Debtor he handed defendant Horvath cash in envelopes or wrapped in rubber bands and would always tell defendant Horvath how much money was in the envelope(s).

253.    While the Trustee's investigation is ongoing, it is clear that Gracie Square is a net winner in the amount of $2,719,500 and approximately an additional $600,000 in cash [U.S. currency] paid to or for the benefit of Pomerantz and Horvath individually.

254.    Gracie Square, through counsel, has asserted it has no money and all the money is gone from the transfers it received from the Debtor.

**O.    Gracie Square Had No Legitimate Business Operations**

255.    Gracie Square had no legitimate business operations.

256.    Gracie Square acted as a mere conduit to the Gracie Square Defendants.

257.    Gracie Square never maintained any separate corporate existence.

258.    Defendant Pomerantz acted as agent for defendant Gracie Square in connection with the financial transactions with the Debtor.

259.    Defendant Pomerantz and Horvath are Gracie Square.

260.    Defendants Pomerantz and Horvath are alter egos of Gracie Square.

261.    Gracie Square had no separate corporate existence.

262.    Upon information and belief, defendant Pomerantz caused and/or directed the transfers of assets of defendant Gracie Square to whom he chose to conceal his fraud.

263.    Gracie Square never maintained any corporate formality or treated defendant Gracie Square as a separate and distinct corporate entity.

264.    At all times relevant hereto, defendant Gracie Square was under-capitalized.

265.    At all times relevant hereto, defendant Pomerantz engaged in excessive control over defendant Gracie Square and used the corporate shell in order to further his own personal gain.

266.    At all times relevant hereto, defendant Gracie Square did not pay rent, utilities, or other ordinary expenses of a company.

267.     During the Debtor's plea agreement and confirmed by the Trustee based on his investigation, which is ongoing, there is no record of the Debtor having purchased any "jewelry lots" in connection with his representations.

268.     The Debtor was operating a Ponzi Scheme and the Defendants knew or should have known.

269.     The Debtor did not have any knowledge of the Gracie Square Defendants' activity, what they were doing with their business, or the manner in which it was operating.

270.      At all times relevant hereto, the Debtor had liabilities which exceeded his assets.

**P.     Avoiding the Gracie Square Transfers From the Debtor**

271.     The Trustee seeks to avoid all transfers from the Debtor to Gracie Square during the Gracie Square Time Period.

272.     The Trustee seeks to avoid all those transfers as set forth in the Application.

273.     The Trustee seeks to collapse the transactions with Gracie Square as the entity acted as a mere conduit to the Debtor.

274.     During the Gracie Square Time Period, Gracie Square received deposits from the Debtor in the amount of $6,396,500.00, which money came from other creditors of the estate and fictitious loans they made to the Debtor (the "Gracie Square Transfers").[9]

275.     Defendant Pomerantz used a substantial portion of the Gracie Square Transfers to pay the Gracie Square Defendants.

276.     Defendant Pomerantz used a portion of the Gracie Square Transfers to pay other Gracie Square Defendants.

---

[9]     During the Gracie Square Time Period, the Debtor transferred $6,396,500.00 to Gracie Square and Gracie Square transferred $3,677,000.00 to the Debtor for a net amount of $2,719,500 being owed to the Debtor's estate by the Defendants.

277.    Defendant Pomerantz exercised dominion and control over the Gracie Square Transfers.

278.    Defendant Pomerantz determined where the Gracie Square Transfers would be delivered and kept a substantial portion for himself personally.

279.    Gracie Square, at the direction of Pomerantz and Horvath, transferred the Gracie Square Transfers to the Defendants (collectively, the "Immediate or Mediate Transfers").

280.    Gracie Square was a mere conduit to the Defendants.

281.    Gracie Square never maintained control over the Gracie Square Transfers and merely transferred the money received from the Debtor to the different Defendants.

282.    Gracie Square should be collapsed as it was a mere fictitious entity used to transfer funds to the Defendants from the Debtor.

283.    The transfers to Gracie Square by the Debtor were, in effect, transfers made directly to the Defendants.

284.    Gracie Square was not the initial transferee of the Gracie Square Transfers.

285.    Defendants are the Initial Transferees of the Gracie Square Transfers.

286.    Defendants are Immediate Transferees of the Gracie Square Transfers.

287.    Defendants are the Mediate Transferees of the Gracie Square Transfers.

288.    On June 17, 2020, Gracie Square filed a proof of claim against the Debtor's estate in the amount of $11,300,000 identified as Claim 19 (the "Gracie Square Claim").

289.    Pomerantz has no proof for the filing of the Gracie Square Claim.

290.    The Gracie Square Claim was fraudulently filed against the Debtor's estate.

291.    The Gracie Square Claim was sworn to by Pomerantz under penalty of perjury.

292.    As a result of the fraudulent scheme, the foregoing transactions between the Debtor and defendant Gracie Square should be collapsed and each of the Defendants should be deemed to be initial transferees of the Total Transfers, or entities for whose benefit the fraudulent transfers were made, pursuant to Bankruptcy Code section 550(a)(1).

293.    Alternatively, if the Defendants are held not to be the initial transferees or beneficiaries under Bankruptcy Code section 550(a)(1), then each of the Defendants are immediate or mediate transferees under Bankruptcy Code section 550(a)(2).

294.    The Plaintiff/Trustee seeks the recovery of all sums received in excess of the investment made by each of the Defendants on a per deal basis, interest from the date of each of the fraudulent transfers, plus attorneys' fees and costs in connection with bringing the instant action.[10]

### FIRST CLAIM FOR RELIEF AGAINST THE GRACIE SQUARE DEFENDANTS
**(Injunctive Relief)**

295.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "294" as if set forth fully herein.

296.    The funds comprising the Gracie Square Transfers constitute property of the Debtor's estate.

297.    The funds comprising the Gracie Square Transfers constitute property of the Debtor's estate.

298.    The funds comprising the Cash Transfers constitute property of the Debtor's estate.

---

[10]    The Gracie Square Transfers, Franklin Square Transfers, Cash Transfers, Harbor Vista Transfers and C.B.K. Transfers shall be collectively referred to as the "Total Transfers")

299.    The funds comprising the Franklin Square Property Transfers constitute property of the Debtor's estate.

300.    The funds comprising the Total Transfers constitute property of the estate.

301.    Plaintiff seeks a preliminary injunction and permanent injunction preventing the Gracie Square Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate, or from taking any action which identifies the source of proceeds coming from the Debtor.

302.    Plaintiff seeks a preliminary injunction and permanent injunction preventing the Gracie Square Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate, or any money held in their respective accounts.

303.    The Debtor's estate will suffer irreparable injury if the Gracie Square Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

304.    To maintain the *status quo*, the balance of hardships weighs decidedly in favor of the granting of injunctive relief.

305.    Plaintiff is likely to prevail on the merits of his claims based upon the allegations set forth herein and the facts of this case.

306.    Pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65 of the Federal Rules of Civil Procedure, the Court may enjoin a party from proceeding with or continuing with, a course of conduct or practice which depletes, diminishes and/or effects property and/or diminishes the value of those assets or impairs the Plaintiff's recovery efforts.

307.    The Gracie Square Defendants will not be harmed by the issuance of a temporary injunction because the requested injunctive relief is a necessary step to return the parties to their

position as of the day prior to meeting the Debtor.

308.    Until such time as full complete disclosure is provided to the Trustee, and further order of the Court, the Gracie Square Defendants should operate on a monthly budget approved by the Court.

309.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting a preliminary and permanent injunction, in an amount to be determined at trial but in no event believed to be less than the Total Transfers, attorney's fees and costs, or such other amounts as to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**<u>AGAINST THE GRACIE SQUARE DEFENDANTS AND THEIR ASSETS</u>**
**(Prejudgment Attachment and Seizure of Assets)**

310.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "309" as if set forth fully herein.

311.    The Franklin Square Property is property of the Debtor's estate.

312.    The funds used to pay the Franklin Square Property Transfers were obtained from the Debtor.

313.    Plaintiff seeks an order seizing the Gracie Square Defendants' assets, including the Franklin Square Property, the Pergament Escrow, and any safe deposit boxes.

314.    The Debtor's estate will suffer irreparable injury if the Gracie Square Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

315.    To maintain the *status quo*, the balance of hardships weighs decidedly in favor of the granting of the relief requested herein.

316.    Plaintiff is likely to prevail on the merits of his claims based upon the allegations set forth herein and the facts of this case.

317.    Pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 7064, and Rule 64 of the Federal Rules of Civil Procedure, the Court may seize, attach or replevin assets clearly marked or identified to the Plaintiff.

318.    The Gracie Square Defendants will not be harmed by a seizure or attachment as the acquisition of these assets came from stolen funds.

319.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting the relief requested herein, plus costs and other fees, or such other amounts as to be proven at trial.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Property of the Estate under 11 U.S.C. §§ 541 and 542)**

320.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "319" as if set forth fully herein.

321.    The Debtor's estate has a legal and equitable interest in the Gracie Square Transfers, the Total Transfers, the Cash Transfers and the Immediate or Mediate Transfers.

322.    The Debtor's legal and equitable interest in the Gracie Square Transfers, the Total Transfers, the Cash Transfers and the Immediate or Mediate Transfers is property of the Debtor's estate.

323.    Defendants have no right or entitlement to the Immediate Transfers or Mediate Transfers or the benefit thereof.

324.    Most or all of the Defendants are related to or have a close affiliation with the Gracie Square Defendants.

325.    The Franklin Square Property is property of the estate.

41

326.     The payments made on account of the development, renovation and maintenance of the Franklin Square Property are property of the estate.

327.     The proceeds in the Pergament Escrow are property of the estate.

328.     The Total Transfers are property of the estate.

329.     By reason of the foregoing, and in accordance with sections 541 and 542 of the Bankruptcy Code, Plaintiff is entitled to the entry of an order and judgment directing Defendants to turn over any and all property of the Debtor's estate in an amount as yet undetermined, but in no event believed to be less than all of the Gracie Square Transfers, the Harbor Vista Transfers, the C.B.K. Transfers, the Franklin Square Property Transfers, the Cash Transfers, plus prejudgment interest thereon from the date of each of the Transfers, plus attorneys' fees, or such other amount as may be determined by the Court.

330.     By reason of the foregoing, the Trustee is entitled to full and complete accounting of Defendants' use of the Gracie Square Transfers, the Cash Transfers, the Immediate or Mediate Transfers and the Total Transfers.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Accounting and Turnover of Property of the Estate under 11 U.S.C. §542)

331.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "330" as if set forth fully herein.

332.     The Debtor had a legal and equitable interest in the Total Transfers and Immediate or Mediate Transfers.

333.     The Debtor's legal and equitable interest in the Total Transfers and the Immediate or Mediate Transfers are property of the Debtor's estate.

334.    Defendants have retained each of the Total Transfers and Immediate or Mediate Transfers, or the benefit of the Total Transfers and Immediate or Mediate Transfers for which no consideration was provided to the Debtor.

335.    Each of the Total Transfers and Immediate or Mediate Transfers is a fraudulent conveyance, which the Trustee may avoid and recover pursuant to 11 U.S.C. §§ 544, 548, 550, 551 of the Bankruptcy Code.

336.    The Defendants each should be required to provide the Trustee with an accounting of all investments made to Gracie Square, the name of the deal, copies of the front and back of all checks and a full and detailed accounting of their winnings.

337.    The Defendants should be required to provide the Trustee with an accounting of all of the Gracie Square Transfers and the Total Transfers and the disposition of those transfers.

338.    By reason of the foregoing, Plaintiff is entitled to the entry of an order and judgment against all Defendants under sections 105(a) and 542 of the Bankruptcy Code: (a) directing a turnover of the Total Transfers and the Immediate or Mediate Transfers as they apply to each Defendant; (b) for a full and complete accounting of Defendants use of the Total Transfers and Immediate or Mediate Transfers as they apply to each Defendant; and (c) the reasons for Defendants retention of all funds paid by the Debtor or Gracie Square to, or for the benefit of, Defendants during the period of January 1, 2017 through the present.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(A))**

339.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "338" as if set forth fully herein.

340.    Some of the Total Transfers and Immediate or Mediate Transfers were made within two (2) years of the Petition Date.

341.    At the time of the Total Transfers, the Debtor knew, or should have known, that his creditors held claims against him.

342.    The Total Transfers were made by the Debtor with the intent to hinder, delay, or defraud his creditors.

343.    The Total Transfers constitutes a fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code.

344.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers and the Immediate or Mediate Transfers pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon attorneys' fees and costs, or such other amount as may be determined by the Court.

## SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(B))

345.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "344" as if set forth fully herein.

346.    Some of the Total Transfers and Immediate or Mediate Transfers were made within two (2) years of the Petition Date.

347.    The Debtor received less than reasonably equivalent value in exchange for the Total Transfers and the Immediate or Mediate Transfers.

348.    The Debtor: (a) was insolvent on the date of each of the Total Transfers or became insolvent as a result of the Total Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was

an unreasonably small capital; or (c) intended to incur or believed that it would incur, debts beyond his ability to pay as they matured.

349.    At the time of the Total Transfers, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

350.    At the time of the Total Transfers, the Debtor knew, or should have known, his creditors held claims against him.

351.    The Total Transfers constitutes a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.

352.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court.

<u>**SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**</u>
**<u>(Immediate and Mediate Transfers)</u>**
**(Fraudulent Transfer Under 11 U.S.C. §544, 550 and 551)**

353.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "352" as if set forth fully herein.

354.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

355.    The Debtor did not receive fair consideration for the Total Transfers, Gracie Square Transfers or the Immediate or Mediate Transfers.

356.    The Debtor received less than reasonably equivalent value in exchange for the Gracie Square Transfers or the Immediate or Mediate Transfers.

357.    At all times relevant, the Debtor: (a) was insolvent on the date of the Total Transfers or became insolvent as a result of the Gracie Square Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur, debts beyond his ability to pay as they matured.

358.    At all times relevant, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

359.    At the time of the Total Transfers and Gracie Square Transfers, the Debtor knew, or should have known, his creditors held claims against him.

360.    By reason of the foregoing, Plaintiff is entitled to an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Total Transfers, Gracie Square Transfers and the Immediate or Mediate Transfers, (b) directing that the Total Transfers, Gracie Square Transfers and the Immediate and Mediate Transfers be set aside, and (c) recovering the Total Transfers, Gracie Square Transfers and the Immediate or Mediate Transfers, or the value thereof, from the Defendants for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDATNS
### (Fraudulent Transfer under DCL)

361.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "360" as if set forth fully herein.

362.    At the time of each of the Total Transfers, the Debtor was insolvent or was thereafter rendered insolvent.

363.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the Total Transfers.

364.    The Total Transfers constitute fraudulent transfers in violation of section 273 of the DCL.

365.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 273 of the DCL, the Plaintiff may avoid the Total Transfers.

366.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 273 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than all of the Total Transfers, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

## NINTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer under DCL)

367.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "366" as if set forth fully herein.

368.    At the time of each of the Total Transfers, the Debtor was engaged in or was about to engage in a business or transaction for which the property remaining in his hands after the Total Transfers was an unreasonably small capital.

369.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the Total Transfers.

370.    The Total Transfers constitute fraudulent transfers in violation of section 274 of the DCL.

371.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 274 of the DCL, Plaintiff may avoid the Total Transfers.

372.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 274 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

## TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer under DCL)

373.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "372" as if set forth fully herein.

374.    At the time of each of the Total Transfers, the Debtor intended or believed that he would incur debts beyond his ability to pay as they matured.

375.    The Debtor did not receive fair consideration in exchange for the Total Transfers.

376.    The Total Transfers constitute fraudulent transfers in violation of section 275 of the DCL.

377.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 275 of the DCL, Plaintiff may avoid the Total Transfers.

378.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 275 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such

other amount as may be determined by the Court, and for a full and complete accounting of Defendants use of the Total Transfers.

## ELEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer under DCL)

379.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "378" as if set forth fully herein.

380.    The Total Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor in violation of section 276 of the DCL.

381.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 276 of the DCL, Plaintiff may avoid the Total Transfers.

382.    By reason of the foregoing, Plaintiff is entitled to an order avoiding the Total Transfers pursuant to section 276 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than all of the Total Transfers, plus attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers.

## TWELFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Attorneys' Fees – DCL 276-a)

383.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "382" as if set forth fully herein.

384.    The Total Transfers were made by the Debtor and received by Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

385.    The Total Transfers constitute fraudulent transfers of the Debtor's assets in violation of section 276-a of the DCL.

386.    By reason of the foregoing, Plaintiff is entitled to a judgment against all Defendants, under section 276-a of the DCL, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

### THIRTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Unjust Enrichment under New York law)

387.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "386" as if set forth fully herein.

388.    Defendants were enriched as a result of the Total Transfers and the Immediate or Mediate Transfers.

389.    The enrichment of Defendants was at the expense of the Debtor.

390.    The circumstances relating to the Total Transfers and Immediate or Mediate Transfers are such that equity and good conscience require Defendants to compensate the Debtor's estate.

391.    By reason of the foregoing, Plaintiff is entitled to an order and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court.

### FOURTEENTH CLAIM FOR RELIEF AGAINST ALL POMERANTZ AND HORVATH
### (Declaratory Judgment)
### (28 U.S.C. § 2201)

392.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "391" as if set forth fully herein.

393.    Upon information and belief, at all times relevant, defendants Pomerantz and Horvath dominated and controlled defendants Gracie Square, Harbor Vista and C.B.K. as if they were their own.

394.    At all times relevant, defendants Pomerantz and Horvath are the true owners of Gracie Square, Harbor Vista and C.B.K. as they each treated Gracie Square, Harbor Vista and C.B.K. as their own.

395.    Defendant Pomerantz knew of the Debtor's arrest in July 2020.

396.    Defendant Horvath knew of the Debtor's arrest in July 2020.

397.    Upon information and belief, Pomerantz and Horvath knew or should have known the Debtor was operating a Ponzi Scheme from much earlier than his arrest by virtue of the exorbitant returns on their investments and deals.

398.    Upon information and belief, defendant Pomerantz was operating his own Ponzi Scheme independent of the Debtor.

399.    Upon information and belief, defendant Horvath was operating his own Ponzi Scheme independent of the Debtor.

400.    By virtue of the domination and control of Gracie Square, Harbor Vista and C.B.K., Pomerantz and Horvath misused Gracie Square, Harbor Vista and C.B.K., for the purpose of hindering, delaying and defrauding its creditors.

401.    As a result, the creditors of Gracie Square, Harbor Vista and C.B.K., have suffered a loss.

402.    Accordingly, under 28 U.S.C. § 2201, the Trustee is entitled to a judicial declaration that: (a) Gracie Square, Harbor Vista and C.B.K., are the alter egos of defendant Pomerantz; (b) Gracie Square, Harbor Vista and C.B.K., are the alter egos of defendant Horvath; and (c) all of the property held by them, including any of the Total Transfers they received, wherever situated, is property of which the ownership is legally and equitably vested in the Plaintiff for the benefit of the estate.

403.    By reason of the foregoing, Plaintiff is entitled to an order and judgment against defendants Pomerantz, individual, in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court.

404.    By reason of the foregoing, Plaintiff is entitled to an order and judgment against defendants Horvath, individually, in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court.

## FIFTEENTH CLAIM FOR RELIEF
### (Piercing the Corporate Veil)

405.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "404" as if set forth fully herein.

406.    Defendant Pomerantz exercised total domination over Gracie Square, Harbor Vista and C.B.K., and the Total Transfers with respect to all money that was received from the Debtor.

407.    Upon information and belief, defendant Pomerantz received a substantial personal benefit and a beneficial interest in the Total Transfers, the Gracie Square Transfers and the Immediate or Mediate Transfers.

408.    Defendant Pomerantz used Gracie Square, Harbor Vista and C.B.K., in order to pay the personal expenses of the Gracie Square Defendants which had nothing to do with Gracie Square's alleged business.

409.    The Gracie Square Defendants treated Gracie Square as their own.

410.    The Gracie Square Defendants used Gracie Square as a mere conduit to make the Total Transfers.

411.    It is necessary to pierce corporate veil of Gracie Square, Harbor Vista and C.B.K. to achieve equity and hold each of the Gracie Square Defendants jointly and severally liable for all of the Total Transfers and the Immediate or Mediate Transfers.

412.    By reason of the foregoing, Plaintiff is entitled to an order and judgment piercing the corporate veil of Gracie Square, Harbor Vista, C.B.K., and awarding damages in an amount to be determined at trial but in no event less than all of the debt and damages incurred by the Debtor's estate related to the Total Transfers, together with interest thereon, attorneys' fees and costs, and punitive damages in the amount of $1,000,000.

## SIXTEENTH CLAIM FOR RELIEF
### (Alter Ego)

413.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "412" as if set forth fully herein.

414.    At all times relevant, Gracie Square, Harbor Vista and C.B.K., did not observe corporate formalities.

415.    At all times relevant, Gracie Square, Harbor Vista and C.B.K., did not have a board of directors.

416.    At all times relevant, Gracie Square, Harbor Vista and C.B.K, did not have any executed and notarized operating agreement.

417.    At all times relevant, the Gracie Square Defendants did not treat themselves as separate and distinct from Gracie Square, Harbor Vista and C.B.K.

418.    At all times relevant, Gracie Square, Harbor Vista and C.B.K, never displayed their own business discretion.

419.    At all times relevant, the Gracie Square Defendants had no other purpose but to receive the Gracie Square Transfers and the Immediate or Mediate Transfers for their personal benefit.

420.    Upon information and belief, at all times relevant, the Gracie Square Defendants used Gracie Square, Harbor Vista and C.B.K, as a mere instrumentality to further the Gracie Square Transfers to or for their benefit.

421.    At all times relevant, defendant Pomerantz exercised complete control and domination of the financial decisions of Gracie Square, Harbor Vista and C.B.K., including making certain transfers to the Gracie Square Defendants and others.

422.    Defendants Gracie Square, Harbor Vista and C.B.K., are the alter egos of defendants Pomerantz and Horvath.

423.    By reason of the foregoing, Plaintiff is entitled to an order and judgment declaring that Gracie Square, Harbor Vista and C.B.K., are the egos of  Pomerantz and Horvath.

### SEVENTEENTH CLAIM FOR RELIEF AGAINST POMERANTZ AND HORVATH
### (Breach of Fiduciary Duty)

424.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "423" as if set forth fully herein.

425.    At all times relevant, defendant Pomerantz was the managing member and/or otherwise person in control of Gracie Square, Harbor Vista and C.B.K.

426.    Defendant Pomerantz made the business decisions of Gracie Square, Harbor Vista and C.B.K.

427.    Defendant Pomerantz exercised dominion and control over Gracie Square, Harbor Vista and C.B.K.

428.    Pursuant to the New York Business Corporation law 717, 719 and 720, defendant Pomerantz owed Gracie Square, Harbor Vista and C.B.K, a fiduciary duty of utmost good faith, care and loyalty in its dealings with the Debtor, the Defendants, Gracie Square, Harbor Vista and C.B.K.

429.    Defendant Pomerantz knew the Trustee was a creditor of Gracie Square as early as the Petition Date.

430.    Defendant Horvath knew the Trustee was a creditor of Gracie Square as early as the Petition Date.

431.    Gracie Square, Harbor Vista and C.B.K were insolvent or rendered insolvent or severely undercapitalized from inception and during all times the Total Transfers, Gracie Square Transfers and Immediate or Mediate Transfers  occurred.

432.    Gracie Square, Harbor Vista and C.B.K., owed a duty to its unsecured creditors of utmost care and good faith in preserving the assets for payment of the just debts as they matured.

433.    The Trustee, on behalf of the Debtor's estate, is a creditor of Gracie Square, Harbor Vista and C.B.K., as a result of the Gracie Square Transfers.

434.    Defendants Pomerantz and Horvath each breached their fiduciary duty to Gracie Square, Harbor Vista and C.B.K and their creditors, which includes the Debtor's estate, by allowing, directing and authorizing the diversion, transfer and misappropriation of Gracie Square's, Harbor Vista's and C.B.K.'s assets for his personal benefit and to the detriment of Gracie Square, Harbor Vista and C.B.K and their creditors.

435.    Defendants Pomerantz and Horvath's misconduct includes, but is not limited to, authorizing and directing payments to or for their personal benefit, not segregating money from investors of Gracie Square, Harbor Vista and C.B.K., paying fictitious expenses, the Franklin

55

Square Property Transfers and not conducting due diligence or identifying the red flags which would have prevented the Defendants investments into Gracie Square, Harbor Vista and C.B.K.

436.    Defendants Pomerantz and Horvath breached their fiduciary duty to Gracie Square, Harbor Vista and C.B.K., by allowing, authorizing and diverting Gracie Square's, Harbor Vista's and C.B.K.'s assets for his own personal benefit.

437.    Defendants Pomerantz and Horvath breached their fiduciary duty to Gracie Square, Harbor Vista and C.B.K and their creditors by failing to remain disinterested.

438.    Defendants Pomerantz and Horvath breached their fiduciary duty to Gracie Square, Harbor Vista and C.B.K., and their creditors by causing the continued dissipation and diversion of Gracie Square's, Harbor Vista's and C.B.K.'s assets for his own personal benefit.

439.    Defendants Pomerantz and Horvath breached their fiduciary duty to the Plaintiff as his largest creditor by causing the continued dissipation and diversion of the Total Transfers for his own personal benefit.

440.    As a direct result of the respective misconduct and breaches occurred and failure to act in accordance with the duties imposed upon them by relevant law, Gracie Square, Harbor Vista and C.B.K., and their creditors have been damaged because the assets of Gracie Square, Harbor Vista and C.B.K., were substantially depleted and/or diverted to or for the benefit of the Gracie Square Defendants or that of various insiders and family members of theirs, rather than the creditors of Gracie Square, Harbor Vista, C.B.K, and the Trustee, on behalf of the estate.

441.    By reason of the foregoing, Plaintiff is entitled to a judgment against the Gracie Square Defendants, jointly and severally, pursuant to Business Corporation Law 717, 719 and 720, in an amount as yet undetermined but in no event less than the Total Transfers, plus

punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## EIGHTEENTH CLAIM FOR RELIEF AGAINST POMERANTZ AND HORVATH
### (Improper Management of Gracie Square, Harbor Vista and C.B.K.)

442.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "441" as if set forth fully herein.

443.    Upon information and belief, the Gracie Square Transfers and other transfers were made in contravention to Business Corporation Law 717, 719 and 720 and constitute management breaches including improper dividends as they were paid to, or on behalf of, Gracie Square Defendants without regard to the financial condition of Gracie Square at the time of the Total Transfers.

444.    By reason of the foregoing, Plaintiff is entitled to judgment against the Gracie Square Defendants in an amount as yet undetermined, but in no event less than the Total Transfers, plus punitive damages in the amount of $1,000,000, interest thereon from the date of each of the transfers, attorneys' fees and costs, or such other amount as may be determined by the Court.

## NINETEENTH CLAIM FOR RELIEF AGAINST POMERANTZ AND HORVATH
### (Self-Dealing, Breach of Duty of Loyalty and Duty of Care)

445.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "444" as if set forth fully herein.

446.    Defendants Pomerantz and Horvath owed Gracie Square, Harbor Vista and C.B.K., and their creditors a duty of loyalty, which duty required defendants Pomerantz and Horvath to promote the interests of Gracie Square, Harbor Vista and C.B.K. rather than their own personal interests.

447.    By engaging in the various forms of misconduct identified herein, defendants Pomerantz and Horvath breached their duty of loyalty to Gracie Square, Harbor Vista and C.B.K. and their creditors by promoting their own interests at the expense of the interests of Gracie Square, Harbor Vista and C.B.K., and their creditors, which the largest creditor is the Trustee on behalf of the Debtor's estate.

448.    By engaging in the various forms of misconduct identified herein, defendants Pomerantz and Horvath breached his duty of loyalty to Gracie Square, Harbor Vista and C.B.K., and their creditors by engaging in self-dealing, and by utilizing their respective position of trust with Gracie Square's, Harbor Vista's and C.B.K.'s  creditors to obtain personal profit or advantage.

449.    The Gracie Square Defendants were each unjustly enriched by the breach of duty of loyalty of defendant Pomerantz to Gracie Square, Harbor Vista and C.B.K., and their creditors.

450.    Defendant Pomerantz was unjustly enriched by the breach of duty of loyalty of Horvath.

451.    Defendant Horvath was unjustly enriched by the breach of duty of loyalty of Pomerantz.

452.    Defendant Pomerantz's actions have damaged Gracie Square, Harbor Vista and C.B.K., and their creditors.

453.    Defendants Pomerantz and Horvath breached their respective fiduciary duty of loyalty and should be required to disgorge any and all of the Total Transfers made to or for his benefit by or from Gracie Square, Harbor Vista and C.B.K.

454.    As a result of defendants Pomerantz and Horvath's breach of duty of loyalty to Gracie Square, Harbor Vista and C.B.K., and their creditors, Plaintiff is entitled to recover from the Gracie Square Defendants a judgment in an amount as yet undetermined, but in no event less than the Total Transfers, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees, and costs, and such other amounts as may be determined by the Court.

## TWENTIETH CLAIM FOR RELIEF AGAINST GRACIE SQUARE
### (To Disallow Claims Pursuant to 11 U.S.C. § 502(d) and (j))

455.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "454" as if fully set forth herein.

456.    Defendant Gracie Square was the initial transferee of the Total Transfers, or the immediate or mediate transferee of such initial transferee of the person for whose benefit the Total Transfers were made.

457.    Defendant Gracie Square has not paid the amount of the Gracie Square Transfers or the Total Transfers or turned over such property for which defendant Gracie Square is liable under section 550 of the Bankruptcy Code.

458.    Pursuant to Bankruptcy Code section 502(d), any claims of defendant Gracie Square against the Debtor, including the Gracie Square Claim, must be disallowed until such time as the Gracie Square Defendants pay to Plaintiff an amount equal to the aggregate amount of the Gracie Square Transfers and the Total Transfers, together with interest thereon.

459.    Pursuant to Bankruptcy Code section 502(j), any and all previously allowed claims of defendant Gracie Square against the Debtor, including any and all claims assigned by defendant Gracie Square, must be reconsidered and disallowed until such time as defendant Gracie Square pays to Plaintiff the amount equal to the aggregate amount of the Gracie Square Transfers and the Total Transfers with interest thereon.

### TWENTY-FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Collapsing Doctrine)**
**(Fraudulent Transfer Under 11 U.S.C. §544, 550 and 551)**

460.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "459" as if set forth fully herein.

461.    Upon information and belief, Gracie Square, Harbor Vista and CBK (the "Corporate Defendants") were established by defendant Pomerantz as a flow through entity.

462.    The Corporate Defendants were mere conduits to the defendants Pomerantz and Horvath.

463.    Upon information and belief, the Corporate Defendants had no separate corporate existence.

464.    The Corporate Defendants were created to funnel money from the Debtor's fraudulent scheme to the defendants Pomerantz and Horvath.

465.    Upon information and belief, the Corporate Defendants were mere conduits to defendants Pomerantz and Horvath.

466.    Upon information and belief, the Corporate Defendants were used by defendants Pomerantz and Horvath to pay for personal expenses, credit cards, professional sports tickets, the Franklin Square Property, withdrawing cash, car payments and other expenses.

467.    Defendant Pomerantz and Horvath exercised dominion and control over the Corporate Defendants.

468.    Upon information and belief, defendants Pomerantz and Horvath directed the transfer of money from the Corporate Defendants.

469.    As a result of the fraudulent scheme, the foregoing transactions between the Debtor and the Corporate Defendants should be collapsed and Pomerantz and Horvath and each

of the Defendants should be deemed to be initial transferees of the Gracie Square Transfers, or entities for whose benefit the Gracie Square Transfers were made, pursuant to Bankruptcy Code section 550(a)(1).

470.    If the Corporate Defendants are held not to be the initial transferees or beneficiaries under Bankruptcy Code section 550(a)(1), then Pomerantz and Horvath and each of the Defendants are immediate or mediate transferees of the Corporate Defendants under Bankruptcy Code section 550(a)(2).

471.    The Corporate Defendants should be collapsed as it was a mere fictitious entity used to transfer funds to or for the benefit of Pomerantz and Horvath and the Defendants for the benefit of Sorrentino.

472.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

473.    The Debtor did not receive fair consideration for the Total Transfers or the Immediate or Mediate Transfers.

474.    The Debtor received less than reasonably equivalent value in exchange for the Total Transfers or the Immediate or Mediate Transfers.

475.    At all times relevant, the Debtor: (a) was insolvent on the date of the Transfers or became insolvent as a result of the Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably small capital; or (c) intended to incur or believed that it would incur, debts beyond his ability to pay as they matured.

476.    At all times relevant, the Debtor was insolvent, or had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

477.    By reason of the foregoing, Plaintiff is entitled to an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) collapsing the Gracie Square Transfers made to the Corporate Defendants; (b) avoiding and preserving the Gracie Square Transfers and the Immediate or Mediate Transfers; (c) directing that the Gracie Square Transfers and the Immediate and Mediate Transfers be set aside; and (d) recovering the Gracie Square Transfers and the Immediate or Mediate Transfers, or the value thereof, from each Defendant for all payments made to each of them or for their benefit, for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

**WHEREFORE**, Plaintiff demands judgment on his claims for relief against Defendants as follows:

i.    On his First Claim for Relief, an order and judgment granting a preliminary and permanent injunction, in an amount to be determined at trial but in no event believed to be less than the Total Transfers, attorney's fees and costs, or such other amounts as to be proven at trial;

ii.    On his Second Claim for Relief, an order and judgment granting the relief requested herein, plus costs and other fees, or such other amounts as to be proven at trial;

iii.    on his Third Claim For Relief, full and complete accounting of Defendants' use of the Gracie Square Transfers, the Cash Transfers, the Immediate or Mediate Transfers and the Total Transfers;

iv.    on his Fourth Claim For Relief, an order and judgment against all Defendants under sections 105(a) and 542 of the Bankruptcy Code: (a) directing a turnover of the Total Transfers and the Immediate or Mediate Transfers as they apply to each Defendant; (b) for a full and complete accounting of Defendants use of the Total Transfers and Immediate or Mediate Transfers as they apply to each Defendant; and (c) the reasons for Defendants retention of all funds paid by the Debtor or Gracie Square to, or for the benefit of, Defendants during the period of January 1, 2017 through the present;

v.      on his Fifth Claim For Relief, an order avoiding the Total Transfers and the Immediate or Mediate Transfers pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon attorneys' fees and costs, or such other amount as may be determined by the Court;

vi.     on his Sixth Claim For Relief, an order avoiding the Total Transfers pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code and a judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court;

vii.    on his Seventh Claim For Relief, an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Total Transfers, Gracie Square Transfers and the Immediate or Mediate Transfers, (b) directing that the Total Transfers, Gracie Square Transfers and the Immediate and Mediate Transfers be set aside, and (c) recovering the Total Transfers, Gracie Square Transfers and the Immediate or Mediate Transfers, or the value thereof, from the Defendants for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys fees and costs, or such other amount as may be determined by the Court;

viii.   on his Eighth Claim For Relief, an order avoiding the Total Transfers pursuant to section 273 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than all of the Total Transfers, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers;

ix.     on his Ninth Claim For Relief, an order avoiding the Total Transfers pursuant to section 274 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers

x.      on his Tenth Claim For Relief, an order avoiding the Total Transfers pursuant to section 275 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers, plus prejudgment interest thereon from the date of each of the Total Transfers, attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendants use of the Total Transfers

xi.    on his Eleventh Claim For Relief, an order avoiding the Total Transfers pursuant to section 276 of the DCL and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than all of the Total Transfers, plus attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendant's use of the Total Transfers

xii.    on his Twelfth Claim For Relief, a judgment against all Defendants, under section 276-a of the DCL, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action

xiii.    on his Thirteenth Claim For Relief, an order and judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court

xiv.    on his Fourteenth Claim For Relief, an order and judgment against defendants Horvath, individually, in an amount as yet undetermined, but in no event believed to be less than the Total Transfers plus prejudgment interest thereon, attorneys' fees and costs, and for such other amount as may be determined by the Court

xv.    on his Fifteenth Claim For Relief, an order and judgment piercing the corporate veil of Gracie Square, Harbor Vista, C.B.K., and awarding damages in an amount to be determined at trial but in no event less than all of the debt and damages incurred by the Debtor's estate related to the Total Transfers, together with interest thereon, attorneys' fees and costs, and punitive damages in the amount of $1,000,000

xvi.    on his Sixteenth Claim For Relief, an order and judgment declaring that Gracie Square, Harbor Vista and C.B.K., are the egos of  Pomerantz and Horvath

xvii.    on his Seventeenth Claim For Relief, a judgment against the Gracie Square Defendants, jointly and severally, pursuant to Business Corporation Law 717, 719 and 720, in an amount as yet undetermined but in no event less than the Total Transfers, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court

xviii.    on his Eighteenth Claim For Relief, judgment against the Gracie Square Defendants in an amount as yet undetermined, but in no event less than the Total Transfers, plus punitive damages in the amount of $1,000,000, interest thereon from the date of each of the transfers, attorneys' fees and costs, or such other amount as may be determined by the Court

xix.    on his Nineteenth Claim For Relief, a judgment in an amount as yet undetermined, but in no event less than the Total Transfers, plus punitive damages in the amount of $1,000,000, interest thereon, attorneys' fees, and costs, and such other amounts as may be determined by the Court

xx.     on his Twentieth Claim For Relief, any and all previously allowed claims of defendant Gracie Square against the Debtor, including any and all claims assigned by defendant Gracie Square, must be reconsidered and disallowed until such time as defendant Gracie Square pays to Plaintiff the amount equal to the aggregate amount of the Gracie Square Transfers and the Total Transfers with interest thereon

xxi.     on his Twenty-First Claim For Relief, an order and judgment under sections 544(b), 550 and 551 of the Bankruptcy Code: (a) collapsing the Gracie Square Transfers made to the Corporate Defendants; (b) avoiding and preserving the Gracie Square Transfers and the Immediate or Mediate Transfers; (c) directing that the Gracie Square Transfers and the Immediate and Mediate Transfers be set aside; and (d) recovering the Gracie Square Transfers and the Immediate or Mediate Transfers, or the value thereof, from each Defendant for all payments made to each of them or for their benefit, for the benefit of the estate and to return to creditors of the estate, plus prejudgment interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court; and

xxii.     for all costs, disbursements and expenses, including attorneys' fees, in connection with this action, together with such other, further and different relief as this Court may deem just and proper.

Dated: June 18, 2021
     Wantagh, New York

                         **LaMONICA HERBST & MANISCALCO, LLP**
                         Special Litigation Counsel to Plaintiff R. Kenneth Barnard, as Trustee

           By:     *s/Joseph S. Maniscalco*
                  Joseph S. Maniscalco, Esq.
                  Melanie A. FitzGerald, Esq.
                  3305 Jerusalem Avenue, Suite 201
                  Wantagh, New York 11793
                  Telephone: (516) 826-6500